**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| **IN RE:**<br><br>**Elite Project Management LLC**<br>83-4399769<br>2437 Otero Pass<br>Fort Worth, TX 76131<br>**Debtor.** | **Case No.:** **26-42193-MXM-11**<br><br>**Chapter:** **11** |

# DEBTOR'S PLAN OF REORGANIZATION [DATED AUGUST 18, 2026]

Pursuant to section 1121(a) of the Bankruptcy Code, Elite Project Management LLC, the debtor and debtor-in-possession in this Case hereby proposes this Plan of Reorganization

## INTRODUCTION

The purpose of this Plan is to provide the details of the Debtor's proposed reorganization and proposed distributions of money and/or property to their Creditors After the Plan has been confirmed, the Bankruptcy Court will retain jurisdiction to determine the allowance of all Claims and to effectuate and enforce the terms of this Plan.

## BACKGROUND

### Business History and Operations

Debtor is a Texas limited liability company that operates a project management and field-services business based at 2437 Otero Pass, Fort Worth, Texas, and is managed by its principal, Bryan Young. In the ordinary course of business the Debtor operates a fleet of work vehicles financed through Ally Bank and TD Bank, N.A. and employs personnel in Texas and California. The primary cause for the filing of this bankruptcy case was a liquidity shortfall attributable to a series of high-cost merchant cash advance obligations and accrued employment tax liabilities.

## CONDITIONS TO CONFIRMATION

The Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Plan as **Exhibit "A"**.

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan. The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments. Attached as **Exhibit "B"** are projections of Debtor's revenue and expenses.

## ARTICLE 1: PLAN SUMMARY

1.1. **Reorganization**: The Plan provides for a reorganization and restructuring of the Debtor's financial obligations.

1.2. **Distribution**: The Plan provides for a distribution to Creditors in accordance with the terms of the Plan from the Debtor over the course of **five (5)** years from the Debtor's continued business operations.

1.3. **Classes**: The Plan provides for:

| | |
|---|---|
| **1** | Class of priority Claims; |
| **9** | Classes of secured Claims; |
| **1** | Class of unsecured Claims; and |
| **1** | Class of equity security holders. |

Unsecured Creditors holding Allowed Claims will receive distributions paid quarterly over five (5) years in the following approximate amounts:

| DEBTOR | PROJECTED QUARTERLY DISTRIBUTION |
|---|---|
| **Elite Project Management LLC** | $60,000 for 20 Quarters |

This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 4 of this Plan for information regarding the precise treatment of their claim. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE 2: CLASSIFICATION OF CLAIMS AND INTERESTS

| | | | |
|---|---|---|---|
| 2.1. | **Class 1A** | ................. | The claim of Ad Valorem Tax Authorities to the extent Allowed as Secured Claims under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.2. | **Class 1B** | ................. | The Ally (Claim 5) Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.3. | **Class 1C** | ................. | The Ally (Claim 7) Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.4. | **Class 1D** | ................. | The Ally (Claim 8) Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.5. | **Class 1E** | ................. | The Ally (Claim 10) Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.6. | **Class 1F** | ................. | The Fiji SPV Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.7. | **Class 1G** | ................. | The Redwood Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.8. | **Class 1H** | ................. | The TD Bank (Claim 3) Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |
| 2.9. | **Class 1I** | ................. | The TD Bank (Claim 4) Claim to the extent Allowed as a Secured Claim under 11 U.S.C. § 506 of the Bankruptcy Code. |

| | | | |
|---|---|---|---|
| 2.10 | **Class 2** | ................. | All Allowed Claims entitled to priority under § 507(a) of the Bankruptcy Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)). |
| 2.11 | **Class 3** | ................. | All non-priority unsecured Claims Allowed under § 502 of the Bankruptcy Code. |
| 2.12 | **Class 4** | ................. | Equity Interests of the Debtor |

## ARTICLE 3: TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIOIRTY TAX CLAIMS AND QUARTERLY AND COURT FEES

| | | |
|---|---|---|
| 3.1. | **Unclassified Claims** | Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes. |
| 3.2. | **Administrative Expense Claims** | Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid in full on the effective date of this Plan by the Debtor, but only to the extent of each such Debtor's liability, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor as set forth in the following sections 3.3 through and including 3.4 or post-confirmation. **NOTE: This treatment is materially altered in the event of confirmation pursuant to § 1191(b) as to claims arising under §§ 507(a)(2) and (3) as noted in section 3.6 of this Plan.** |
| 3.3. | **Priority Tax Claims** | Each holder of an Allowed Priority Tax Claim against the Debtor shall receive on the Effective Date, in full satisfaction, release and discharge of such Allowed Priority Tax Claim, at the election of the liable Debtor, either: (i) Cash payment in the amount of such holder's Allowed Priority Tax Claim; (ii) deferred Cash payments over a period not to exceed five (5) years, from the Petition Date of a value as of the Effective Date, equal to the Allowed amount of such Claim; or (iii) such other terms as may be agreed upon by such holder and the liable Debtor.<br><br>**<u>INTERNAL REVENUE SERVICE</u>**<br><br>The rate of interest to be paid on the Allowed IRS Priority Tax Claim shall be equal to the underpayment rate specified in 26 U.S.C. § 6621 (determined without regard to 26 U.S.C. § 6621(a)) as of the Effective Date (**the underpayment rate is currently 7.0%**).<br><br><u>Default Provision - IRS</u>. Notwithstanding any other provision or term of this Plan or Confirmation Order, the following Default Provision shall control as to the United States of America, Internal Revenue Service ("IRS") and all of its claims, including any administrative claim (the IRS Claim):<br><br>(1) Notwithstanding any other provision in the Plan, if the Debtor, the Reorganized Debtor, or any successor in interest fails |

to pay when due any payment required to be made on federal taxes, the IRS Claim, or other payment required to be made to the IRS under the terms and provisions of this Plan, the Confirmation Order, or the Internal Revenue Code (26 U.S.C.), or fails to timely file any required federal tax return, or if any other event of default as set forth in the Plan occurs, the IRS shall be entitled to give the Debtor, the Reorganized Debtor and/or any successor in interest and their counsel of record, by United States Certified Mail, written notice of the failure and/or default with demand that it be cured, and if the failure and/or default is not cured within 14 days of said notice and demand, then the following shall apply to the IRS:

(A) The administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal tax lien and the powers of levy, seizure, and collection as provided under the Internal Revenue Code;

(B) The automatic stay of 11 U.S.C. § 362 and any injunction of this Plan or in the Confirmation Order shall, with regard to the IRS only, lift or terminate without further notice or hearing by the Court, and the entire imposed liability owed to the IRS, together with any unpaid current liabilities, may become due and payable immediately; and

(C) The IRS shall have the right to proceed to collect from the Debtor, the Reorganized Debtor or any successor in interest any of the prepetition tax liabilities and related penalties and interest through administrative or judicial collection procedures available under the United States Code as if no bankruptcy petition had been filed and as if no plan had been confirmed.

(2) If the IRS declares the Debtor, the Reorganized Debtor, or any successor in interest to be in default of the Debtor’s, the Reorganized Debtor’s and/or any successor in interest’s obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the Debtor, Reorganized Debtor, and/or any successor in interest. Failure of the IRS to declare a failure and/or default does not constitute a waiver by the United States or its agency the IRS of the right to declare that the Debtor, Reorganized Debtor, and/or any successor in interest is in default.

(3) If full payment is not made within fourteen (14) days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions

of the Internal Revenue Code. The IRS shall only be required to send two notices of failure and/or default, and upon the third event of a failure and/or default the IRS shall be entitled to proceed as set out in paragraphs (A), (B), and/or (C) herein above without further notice to the Debtor, the Reorganized Debtor, or any successor in interest, or its counsel. The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan.

(4) The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor, the Reorganized Debtor, and/or any successor in interest to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor, the Reorganized Debtor and/or any successor in interest to the Internal Revenue Service.

(5) The term "any payment required to be made on federal taxes," as used herein above, is defined as: any payment or deposit required by the Internal Revenue Code to be made by the Debtor from and after the Confirmation Date, or the Reorganized Debtor and/or any successor in interest from and after the Effective Date, to the date the IRS Claim is together with interest paid in full. The term "any required tax return," as used herein above, is defined as: any tax return or report required by the Internal Revenue Code to be made by the Debtor from and after the Confirmation Date, or the Reorganized Debtor and/or any successor in interest from and after the Effective Date, to the date the IRS Claim is together with interest paid in full.

IRS Priority Tax Claim. Estimated at **$2,433,924.30** based upon the proof of claim filed by the IRS. Reorganized Debtor shall pay the IRS Priority Tax Claim in full no later than 48 months after the Effective Date. Which Claim, if allowed and paid with interest at the rate of 7.0% per annum over a period of 48 months, would result in a monthly payment of **$58,283.35**. The Debtor reserves all rights to object to the IRS Priority Tax Claim, including as to the tax period ending June 30, 2026 and as to those periods that were estimated because returns were unfiled.

Address for Payment. Until further notice, all payments due the IRS shall be sent to the following address: **Internal Revenue Service**, 1100 Commerce St, M/S 5026 DAL, Dallas, TX, 75242.

**CALIFORNIA EMPLOYMENT DEVELOPMENT DEPARTMENT**

The rate of interest to be paid on the Allowed CA EDD Priority Tax Claim shall be equal to the applicable statutory rate of interest

under Cal. Unemp. Ins. Code § 1129 and Cal. Rev. & Tax. Code § 19521 as of the Effective Date (that rate is currently 7.0% per annum).

CA EDD Priority Tax Claim. Estimated at **$142,441.44** based upon the proof of claim filed by the CA EDD. Reorganized Debtor shall pay the CA EDD Priority Tax Claim in full no later than 48 months after the Effective Date. Which Claim, if allowed and paid with interest at the rate of 7.0% per annum over a period of 48 months, would result in a monthly payment of **$3,410.94**. The Debtor reserves all rights to object to the CA EDD Priority Tax Claim, including as to the identity of the entity named therein.

Address for Payment. Until further notice, all payments due the CA EDD shall be sent to the following address: State of California, Employment Development Department, Bankruptcy Group MIC 92E, P.O. Box 826880, Sacramento, CA 94280-0001.

**COMPTROLLER OF PUBLIC ACCOUNTS AND TWC**

Notwithstanding anything else to the contrary in the Plan or Confirmation Order, these provisions will govern the treatment of the claims of the Comptroller of Public Accounts (the "Comptroller") and the Texas Workforce Commission (the "TWC"): (1) nothing provided in the Plan or Confirmation Order shall affect or impair any statutory or common law setoff rights of the Comptroller or the TWC in accordance with 11 U.S.C. § 553; (2) nothing provided in the Plan or Confirmation Order shall affect or impair any rights of the Comptroller or the TWC to pursue any non-debtor third parties for tax debts or claims, and the Comptroller and TWC specifically opt out of any third party releases, if any; (3) nothing provided in the Plan or Confirmation Order shall be construed to preclude the payment of interest on the Comptroller's or the TWC's administrative expense tax claims; (4) to the extent that interest is payable with respect to any administrative expense, priority or secured tax claim of the Comptroller or the TWC, the interest rate shall be the statutory interest rate, currently 7.75% per annum; and (5) nothing provided in the Plan or Confirmation Order impacts the governmental claims bar date, and Comptroller and TWC may amend their claims at any point.

The Comptroller and TWC shall not be required to file any proof of claim, motion, or request for payment to be paid for any administrative claims. The Comptroller and TWC shall not be required to file any proof of claim, motion, or request for payment to be paid for any obligations that arise or have arisen in the ordinary course of the Debtor's business, including all post-petition taxes incurred by the Debtor and/or Reorganized Debtor

after the Petition Date. All post-petition taxes owed to the Comptroller and TWC shall be paid in full with applicable interest on or before the Effective Date, or as otherwise agreed by the Comptroller and/or TWC, whichever is the respective agency for such post-petition taxes. If any post-petition taxes or Administrative Claims owed to the Comptroller or TWC are not due on the Effective Date, then such post-petition taxes or Administrative Claim shall be paid in the ordinary course of business in accordance with applicable law.

All priority tax claims owed to the Texas Comptroller and/or the TWC shall be paid in full either (1) on the Effective Date; (2) in equal monthly installments of principal and interest no later than forty-eight (48) months of the Debtor's bankruptcy petition date, with the first payment due on the Effective Date and every month thereafter on that same day of the month; or (3) as otherwise agreed to by the Comptroller and/or the TWC. The Comptroller's and the TWC's priority tax claims shall accrue interest at the statutory rate of interest, currently 7.75% per annum until paid in full.

A failure by the Debtor or Reorganized Debtor to make a plan payment to an agency of the State of Texas shall be an Event of Default. If the Debtor or Reorganized Debtor fails to cure an Event of Default as to an agency of the State of Texas within five (5) days after service of a written notice of default by email to counsel for Debtor at **robert@demarcomitchell.com**, then that agency may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies available under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in this court. The Debtor and/or Reorganized Debtor can receive up to three (3) notices of default, however, the third default cannot be cured. The Texas Comptroller and TWC preserve all available bankruptcy and state law remedies, if any, in the event of default of payment on claims as laid out herein above.

Debtor and/or Reorganized Debtor shall file all delinquent returns due and owing to Texas Comptroller or TWC on or before Effective date and stay current on filings thereafter. Notwithstanding anything to the contrary in the Plan or this Order, the Debtor and/or Reorganized Debtor will retain documents for the four-year inspection period set forth in Texas Tax Code § 111.0041(a) (or for any pending audits, the later of four years or the time any and all claim(s) based on such audit are resolved).

Comptroller and TWC Priority Tax Claims. The Comptroller Priority Tax Claim is estimated at **$0.00** based upon the Court's

claim register. The TWC Priority Tax Claim is estimated at **$6,138.44** based upon the proof of claim filed by the TWC, which Claim, if allowed and paid with interest at the rate of 7.75% per annum (the prime rate of 6.75% plus 1.00%) over a period of 48 months, would result in a monthly payment of **$149.14**.

Address for Payment. Until further notice, all payments due the Comptroller shall be sent to the following address: Revenue Accounting Division, Attention: Bankruptcy, P.O. Box 13528, Austin, TX, 78711, and all payments due the TWC shall be sent to the following address: Texas Workforce Commission, Finance Division-Collections SAU, 101 East 15th Street, Room 556, Austin, TX 78778.

| | | |
|---|---|---|
| 3.4. | **EXCEPTION: Payment of Administrative Expense Claims Through Plan Term** | If the Plan is confirmed pursuant to § 1191(b) any and all claims of a kind specified in paragraph (2) or (3) of § 507(a) of the Bankruptcy Code shall be paid the Allowed amount of such claim in equal monthly installments during the Plan Term commencing on the Effective Date or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |

## ARTICLE 4: TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

### MOTION FOR VALUATION

**Confirmation of this Plan by the Bankruptcy Court may modify your rights by providing for payment of less than the full amount of your Claim, by setting the value of the collateral securing your Claim.**

**Pursuant to Bankruptcy Rule 3012, for purposes of 11 U.S.C. § 506(a) and § 1129(b)(2) and for purposes of determination of the amounts to be distributed to holders of secured Claims who do not accept the Plan, Debtor hereby moves the Court to value the collateral referenced in Class 1 (and all the subsections thereof) of Section 4.1 of the Plan at the Principal Amount set forth therein.**

**4.1. Claims and Interests shall be treated as follows under this Plan**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1A - Secured Claim of *Ad Valorem* Tax Authorities | ☑ Impaired<br>☐ Unimpaired | Each holder of an Allowed Class 1A Claim payable to a taxing authority for *ad valorem* taxes shall retain its full rights and liens to the extent of its Allowed Secured Tax Claim until its Allowed Secured Tax Claim has been paid in full.<br><br>The Debtor's pre-petition ad valorem tax obligations for tax years 2023 and 2024 remain unpaid. The Reorganized Debtor shall pay each |

holder of an Allowed Class 1A Claim in full, together with interest at the statutory rate of 1% per month (12% per annum) as required by 11 U.S.C. § 511, in equal monthly installments commencing the first (1st) day of the first full calendar month following the Effective Date and continuing on the same day of each month thereafter until paid in full, and shall pay all post-petition ad valorem taxes in the ordinary course of business as they come due.

Liens and Interest. Any and all liens (both those arising prepetition and post-petition) held by the holder of an Allowed Class 1A Claim shall be preserved in any transfer of assets under the Plan. Each holder of an Allowed Class 1A Claim shall be entitled to receive interest from the Petition Date to the Effective Date pursuant to 11 U.S.C. § 506(b), as well as from the Effective Date until paid in full at a statutory rate of 1% per month as required by 11 U.S.C. § 511. If the post-petition *ad valorem* taxes are not paid prior to the State law delinquency date, each holder of an Allowed Class 1A Claim shall be entitled to receive any penalties and interest that accrue under State law based on the nonpayment of such tax.

Default. In the event the Reorganized Debtor fails to timely pay an Allowed Class 1A Claim or a post-petition tax in compliance with the Plan, the Reorganized Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1A Claim may pursue remedies in accordance with that section against the Reorganized Debtor.

Estimation of Amount. Debtor estimates the aggregate of all Allowed Class 1A Claims is $15,298.73 based upon the Court's claim register.

Estimated Payment. Debtor estimates the aggregate monthly payment will be $340.31 per month.

Address for Payment. Until further notice, all payments due the holder of an Allowed Class 1A Claim shall be sent to the address set forth

| | | |
|---|---|---|
| | | in the respective Class 1A Claim holder's proof of claim. |
| **Class 1B - Secured Claim of Ally – Claim 5** | Impaired<br>☐ Unimpaired | Class 1B Summary. Class 1B consists of the Secured Claim of **Ally – Claim 5** (Proof of Claim **5**), arising under that certain **Retail Installment Sale Contract dated September 7, 2023**. **Ally – Claim 5** has filed a proof of claim asserting it is owed approximately **$63,372.29**. The Allowed Class 1B Claim shall be modified as set forth herein and paid by Reorganized Debtor as follows.<br><br>**THIS PLAN TREATMENT CONSTITUTES A CLAIM OBJECTION PURSUANT TO BANKRUPTCY RULE 3007.**<br><br>Collateral. The collateral securing the Class 1B Claim is described as: **2024 Chevrolet Silverado 1500** (VIN/Identifier: **1GCUDJEL3RZ127851**).<br><br>Principal Amount. The unpaid principal balance of the Allowed Class 1B Claim is hereby allowed as an Allowed Secured Claim in the amount of **$44,000.00**. The deficiency of **$19,372.29** shall be treated as an Allowed Class 3 Claim.<br><br>Interest. Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1B Claim holder at the rate of **7.25%** per annum from and after the Confirmation Date.<br><br>Payments. The Allowed Class 1B Claim, plus interest thereon, shall be paid by Reorganized Debtor in consecutive monthly installments of **$876.45** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1B Claim is paid in full.<br><br>Maturity. The maturity date shall be the first (1st) day of the **60th** month after the first full calendar month following the Effective Date, at which time the remaining unpaid balance of the Allowed Class 1B Claim, including interest, shall be due and payable in full. |

| | | |
|---|---|---|
| | | Pre-Payment. At any time after the Effective Date, without penalty or premium, the Allowed Class 1B Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Debtor.<br><br>Lien Retention. Except to the extent inconsistent herewith or with the law, the validity and priority of the lien securing the Allowed Class 1B Claim shall remain in full force and effect following the Effective Date until the Allowed Class 1B Claim is paid in full.<br><br>Default. In the event Reorganized Debtor fails to timely pay an Allowed Class 1B Claim, Reorganized Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1B Claim may pursue remedies in accordance with that section.<br><br>Address for Payment. Until further notice, all payments due the holder of an Allowed Class 1B Claim shall be sent to: **Ally Bank, c/o AIS Portfolio Services, LLC, Payment Processing Center, P.O. Box 660618, Dallas, TX 75266-0618**. |
| **Class 1C - Secured Claim of Ally – Claim 7** | Impaired<br>☐ Unimpaired | Class 1C Summary. Class 1C consists of the Secured Claim of **Ally – Claim 7** (Proof of Claim **7**), arising under that certain **Retail Installment Sale Contract dated September 1, 2023**. **Ally – Claim 7** has filed a proof of claim asserting it is owed approximately **$40,447.38**. The Allowed Class 1C Claim shall be modified as set forth herein and paid by Reorganized Debtor as follows.<br><br>**THIS PLAN TREATMENT CONSTITUTES A CLAIM OBJECTION PURSUANT TO BANKRUPTCY RULE 3007.**<br><br>Collateral. The collateral securing the Class 1C Claim is described as: **2023 Chevrolet Silverado 1500** (VIN/Identifier: **3GCPDFEK6PG238845**). |

Principal Amount. The unpaid principal balance of the Allowed Class 1C Claim is hereby allowed as an Allowed Secured Claim in the amount of **$31,000.00**. The deficiency of **$9,447.38** shall be treated as an Allowed Class 3 Claim.

Interest. Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1C Claim holder at the rate of **7.25%** per annum from and after the Confirmation Date.

Payments. The Allowed Class 1C Claim, plus interest thereon, shall be paid by Reorganized Debtor in consecutive monthly installments of **$617.50** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1C Claim is paid in full.

Maturity. The maturity date shall be the first (1st) day of the **60th** month after the first full calendar month following the Effective Date, at which time the remaining unpaid balance of the Allowed Class 1C Claim, including interest, shall be due and payable in full.

Pre-Payment. At any time after the Effective Date, without penalty or premium, the Allowed Class 1C Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Debtor.

Lien Retention. Except to the extent inconsistent herewith or with the law, the validity and priority of the lien securing the Allowed Class 1C Claim shall remain in full force and effect following the Effective Date until the Allowed Class 1C Claim is paid in full.

Default. In the event Reorganized Debtor fails to timely pay an Allowed Class 1C Claim, Reorganized Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1C Claim may pursue remedies in accordance with that section.

| | | |
|---|---|---|
| | | Address for Payment. Until further notice, all payments due the holder of an Allowed Class 1C Claim shall be sent to: **Ally Bank, c/o AIS Portfolio Services, LLC, Payment Processing Center, P.O. Box 660618, Dallas, TX 75266-0618**. |
| **Class 1D - Secured Claim of Ally – Claim 8** | Impaired<br>☐ Unimpaired | Class 1D Summary. Class 1D consists of the Secured Claim of **Ally – Claim 8** (Proof of Claim **8**), arising under that certain **Retail Installment Sale Contract dated September 1, 2023**. **Ally – Claim 8** has filed a proof of claim asserting it is owed approximately **$65,705.21**. The Allowed Class 1D Claim shall be modified as set forth herein and paid by Reorganized Debtor as follows.<br><br>**THIS PLAN TREATMENT CONSTITUTES A CLAIM OBJECTION PURSUANT TO BANKRUPTCY RULE 3007.**<br><br>Collateral. The collateral securing the Class 1D Claim is described as: **2024 Chevrolet Silverado 1500** (VIN/Identifier: **1GCUDJEL4RZ115322**).<br><br>Principal Amount. The unpaid principal balance of the Allowed Class 1D Claim is hereby allowed as an Allowed Secured Claim in the amount of **$44,000.00**. The deficiency of **$21,705.21** shall be treated as an Allowed Class 3 Claim.<br><br>Interest. Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1D Claim holder at the rate of **7.25%** per annum from and after the Confirmation Date.<br><br>Payments. The Allowed Class 1D Claim, plus interest thereon, shall be paid by Reorganized Debtor in consecutive monthly installments of **$876.45** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1D Claim is paid in full.<br><br>Maturity. The maturity date shall be the first (1st) day of the **60th** month after the first full |

| | | | |
|---|---|---|---|
| | | | calendar month following the Effective Date, at which time the remaining unpaid balance of the Allowed Class 1D Claim, including interest, shall be due and payable in full.<br><br>Pre-Payment. At any time after the Effective Date, without penalty or premium, the Allowed Class 1D Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Debtor.<br><br>Lien Retention. Except to the extent inconsistent herewith or with the law, the validity and priority of the lien securing the Allowed Class 1D Claim shall remain in full force and effect following the Effective Date until the Allowed Class 1D Claim is paid in full.<br><br>Default. In the event Reorganized Debtor fails to timely pay an Allowed Class 1D Claim, Reorganized Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1D Claim may pursue remedies in accordance with that section.<br><br>Address for Payment. Until further notice, all payments due the holder of an Allowed Class 1D Claim shall be sent to: **Ally Bank, c/o AIS Portfolio Services, LLC, Payment Processing Center, P.O. Box 660618, Dallas, TX 75266-0618**. |
| | **Class 1E - Secured Claim of Ally – Claim 10** | Impaired<br>☐ Unimpaired | Class 1E Summary. Class 1E consists of the Secured Claim of **Ally – Claim 10** (Proof of Claim **10**), arising under that certain **Retail Installment Sale Contract dated September 1, 2023**. **Ally – Claim 10** has filed a proof of claim asserting it is owed approximately **$40,156.16**. The Allowed Class 1E Claim shall be modified as set forth herein and paid by Reorganized Debtor as follows.<br><br>**THIS PLAN TREATMENT CONSTITUTES A CLAIM OBJECTION PURSUANT TO BANKRUPTCY RULE 3007.** |

Collateral. The collateral securing the Class 1E Claim is described as: **2023 Chevrolet Silverado 1500** (VIN/Identifier: **2GCUDEED1P1138725**).

Principal Amount. The unpaid principal balance of the Allowed Class 1E Claim is hereby allowed as an Allowed Secured Claim in the amount of **$34,000.00**. The deficiency of **$6,156.16** shall be treated as an Allowed Class 3 Claim.

Interest. Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1E Claim holder at the rate of **7.25%** per annum from and after the Confirmation Date.

Payments. The Allowed Class 1E Claim, plus interest thereon, shall be paid by Reorganized Debtor in consecutive monthly installments of **$677.26** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1E Claim is paid in full.

Maturity. The maturity date shall be the first (1st) day of the **60th** month after the first full calendar month following the Effective Date, at which time the remaining unpaid balance of the Allowed Class 1E Claim, including interest, shall be due and payable in full.

Pre-Payment. At any time after the Effective Date, without penalty or premium, the Allowed Class 1E Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Debtor.

Lien Retention. Except to the extent inconsistent herewith or with the law, the validity and priority of the lien securing the Allowed Class 1E Claim shall remain in full force and effect following the Effective Date until the Allowed Class 1E Claim is paid in full.

Default. In the event Reorganized Debtor fails to timely pay an Allowed Class 1E Claim, Reorganized Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder

| | | |
|---|---|---|
| | | of the affected Allowed Class 1E Claim may pursue remedies in accordance with that section.<br><br>Address for Payment. Until further notice, all payments due the holder of an Allowed Class 1E Claim shall be sent to: **Ally Bank, c/o AIS Portfolio Services, LLC, Payment Processing Center, P.O. Box 660618, Dallas, TX 75266-0618**. |
| **Class 1F - Secured Claim of Fiji SPV** | Impaired<br>☐ Unimpaired | Class 1F Summary. Class 1F consists of the Secured Claim of **Fiji SPV** (Proof of Claim **18**), arising under that certain **Standard Merchant Cash Advance Agreement dated April 20, 2026**. **Fiji SPV** has filed a proof of claim asserting it is owed approximately **$155,375.00**. The Allowed Class 1F Claim shall be modified as set forth herein and paid by Reorganized Debtor as follows.<br><br>**THIS PLAN TREATMENT CONSTITUTES A CLAIM OBJECTION PURSUANT TO BANKRUPTCY RULE 3007.**<br><br>Collateral. The collateral securing the Class 1F Claim is described as: **Blanket UCC-1 lien on all personal property of the Debtor (Texas Secretary of State File No. 260002282138, filed April 20, 2026)**.<br><br>The Class 1F Claim states the value of the collateral securing the Claim is the same as the face amount of the Claim. The Debtor's Schedules reflect no value for the collateral securing the Class 1F Claim, and Debtor asserts there is no collateral to secure the obligation.<br><br>Claim Amount. The Class 1F Claim shall be treated solely as a Class 3 Claim to the extent allowed. |
| **Class 1G - Secured Claim of Redwood** | Impaired<br>☐ Unimpaired | Class 1G Summary. Class 1G consists of the Secured Claim of **Redwood** (Proof of Claim **17**), arising under that certain **Commercial Loan and Security Agreement**. **Redwood** has filed a proof of claim asserting it is owed approximately **$182,835.00**. The Allowed Class |

| | | |
|---|---|---|
| | | 1G Claim shall be modified as set forth herein and paid by Reorganized Debtor as follows.<br><br>**THIS PLAN TREATMENT CONSTITUTES A CLAIM OBJECTION PURSUANT TO BANKRUPTCY RULE 3007.**<br><br>Collateral. The collateral securing the Class 1G Claim is described as: **Blanket UCC-1 lien on all accounts and proceeds of the Debtor (Texas Secretary of State File No. 250057495676, filed October 22, 2025)**.<br><br>The Class 1G Claim states the value of the collateral securing the Claim is the same as the face amount of the Claim. The Debtor's Schedules reflect no value for the collateral securing the Class 1G Claim, and Debtor asserts there is no collateral to secure the obligation.<br><br>Claim Amount. The Class 1G Claim shall be treated solely as a Class 3 Claim to the extent allowed. |
| **Class 1H - Secured Claim of TD Bank – Claim 3** | Impaired<br>☐ Unimpaired | Class 1H Summary. Class 1H consists of the Secured Claim of **TD Bank – Claim 3** (Proof of Claim **3**), arising under that certain **Retail Installment Sale Contract dated October 18, 2021**. **TD Bank – Claim 3** has filed a proof of claim asserting it is owed approximately **$36,089.78**. The Allowed Class 1H Claim shall be modified as set forth herein and paid by Reorganized Debtor as follows.<br><br>**THIS PLAN TREATMENT CONSTITUTES A CLAIM OBJECTION PURSUANT TO BANKRUPTCY RULE 3007.**<br><br>Collateral. The collateral securing the Class 1H Claim is described as: **2021 Cadillac Escalade** (VIN/Identifier: **1GYS4FKL4MR307822**).<br><br>Principal Amount. The unpaid principal balance of the Allowed Class 1H Claim is hereby allowed as an Allowed Secured Claim in the amount of **$36,089.78**. There shall be no deficiency claim. |

Interest. Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1H Claim holder at the rate of **5.59%** per annum from and after the Confirmation Date.

Payments. The Allowed Class 1H Claim, plus interest thereon, shall be paid by Reorganized Debtor in consecutive monthly installments of **$690.86** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1H Claim is paid in full.

Maturity. The maturity date shall be the first (1st) day of the **60th** month after the first full calendar month following the Effective Date, at which time the remaining unpaid balance of the Allowed Class 1H Claim, including interest, shall be due and payable in full.

Pre-Payment. At any time after the Effective Date, without penalty or premium, the Allowed Class 1H Claim may be prepaid, in whole or in part, in the sole discretion of Reorganized Debtor.

Lien Retention. Except to the extent inconsistent herewith or with the law, the validity and priority of the lien securing the Allowed Class 1H Claim shall remain in full force and effect following the Effective Date until the Allowed Class 1H Claim is paid in full.

Default. In the event Reorganized Debtor fails to timely pay an Allowed Class 1H Claim, Reorganized Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1H Claim may pursue remedies in accordance with that section.

Address for Payment. Until further notice, all payments due the holder of an Allowed Class 1H Claim shall be sent to: **TD Bank, N.A., successor in interest to TD Auto Finance LLC, P.O. Box 551080, Jacksonville, FL 32255-1080**.

| | | |
|---|---|---|
| **Class 1I - Secured Claim of TD Bank – Claim 4** | Impaired<br>☐ Unimpaired | Class 1I Summary. Class 1I consists of the Secured Claim of **TD Bank – Claim 4** (Proof of Claim **4**), arising under that certain **Retail Installment Sale Contract dated February 7, 2024**. **TD Bank – Claim 4** has filed a proof of claim asserting it is owed approximately **$45,414.14**. The Allowed Class 1I Claim shall be modified as set forth herein and paid by Reorganized Debtor as follows.<br><br>**THIS PLAN TREATMENT CONSTITUTES A CLAIM OBJECTION PURSUANT TO BANKRUPTCY RULE 3007.**<br><br>Collateral. The collateral securing the Class 1I Claim is described as: **2024 Ram 1500** (VIN/Identifier: **1C6RREFT5RN164590**).<br><br>Principal Amount. The unpaid principal balance of the Allowed Class 1I Claim is hereby allowed as an Allowed Secured Claim in the amount of **$45,414.14**. There shall be no deficiency claim.<br><br>Interest. Simple interest shall accrue on the unpaid balance owed to the Allowed Class 1I Claim holder at the rate of **7.25%** per annum from and after the Confirmation Date.<br><br>Payments. The Allowed Class 1I Claim, plus interest thereon, shall be paid by Reorganized Debtor in consecutive monthly installments of **$904.62** commencing the first (1st) day of the first full calendar month following the Effective Date, and continuing on the same day each month thereafter until the Allowed Class 1I Claim is paid in full.<br><br>Maturity. The maturity date shall be the first (1st) day of the **60th** month after the first full calendar month following the Effective Date, at which time the remaining unpaid balance of the Allowed Class 1I Claim, including interest, shall be due and payable in full.<br><br>Pre-Payment. At any time after the Effective Date, without penalty or premium, the Allowed Class 1I Claim may be prepaid, in whole or in |

| | | |
|---|---|---|
| | | part, in the sole discretion of Reorganized Debtor.<br><br>Lien Retention. Except to the extent inconsistent herewith or with the law, the validity and priority of the lien securing the Allowed Class 1I Claim shall remain in full force and effect following the Effective Date until the Allowed Class 1I Claim is paid in full.<br><br>Default. In the event Reorganized Debtor fails to timely pay an Allowed Class 1I Claim, Reorganized Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1I Claim may pursue remedies in accordance with that section.<br><br>Address for Payment. Until further notice, all payments due the holder of an Allowed Class 1I Claim shall be sent to: **TD Bank, N.A., successor in interest to TD Auto Finance LLC, P.O. Box 551080, Jacksonville, FL 32255-1080**. |
| Class 2 - Priority Claims excluding those in Article 3 of this Plan | ☐ Impaired<br>☑ Unimpaired | Class 2 consists of all Allowed Priority Claims against the Debtor. Except to the extent that the holder of such Claim agrees to a different treatment, the Reorganized Debtor shall pay Cash on the Effective Date to each holder of any Allowed Claim in Class 2 the amount of such Allowed Claim against such Reorganized Debtor. |
| Class 3 – Non-priority unsecured Claims | ☑ Impaired<br>☐ Unimpaired | Class 3 consists of Allowed Claims against Debtor (including Claims arising from the rejection of executory contracts and/or unexpired leases) other than: (i) Administrative Claims; (ii) Priority Tax Claims; or (iii) Claims included within any other Class designated in this Plan. Class 3 shall be deemed to include those Creditor(s) holding an alleged Secured Claim against Debtor, for which: (y) no collateral exists to secure the alleged Secured Claim; and/or (z) liens, security interests, or other encumbrances that are senior in priority to the alleged Secured Claim exceed the fair |

| | | |
|---|---|---|
| | | market value of the collateral securing such alleged Secured Claims as of the Petition Date.<br><br>Each holder of an Allowed Unsecured Claim in Class 3 shall be paid by Reorganized Debtor from an unsecured creditor pool, which pool shall be funded at the rate of **$20,000.00** per month commencing the first full month after the Effective Date. Payments from the unsecured creditor pool shall be paid quarterly, **for a period not to exceed five (5) years (20 quarterly payments)** and the first quarterly payment will be due on the twentieth (20th) day of each complete post-petition quarter.<br><br>Estimation of Amount. Debtor estimates the aggregate of all Allowed Class 3 Claims is less than **$1,620,000** based upon Debtor's review of the Court's claim register, Debtor's bankruptcy schedules, and anticipated deficiency claims and Claim objections. |
| Class 4 – Equity Security Holders of the Debtor | ☐ Impaired<br>☑ Unimpaired | Class 4 consists of the holders of Allowed Interests in the Debtor. The holder of an Allowed Class 4 Interest shall retain their interests in the Reorganized Debtor. |

**IF THE HOLDER OF A SECURED CLAIM DOES NOT TIMELY: (1) TENDER A BALLOT RESPECTING THE CONFIRMATION OF THE PLAN AND/OR (2) OBJECT TO THE CONFIRMATION OF THE PLAN, THAT SECURED CLAIM HOLDER IS DEEMED TO HAVE VOTED IN FAVOR OF CONFIRMATION.**

## ARTICLE 5: ALLOWANCE AND DISALLOWANCE OF CLAIMS

| | |
|---|---|
| 5.1. **Disputed Claim** | A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:<br><br>(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or<br><br>(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |

| | | |
|---|---|---|
| 5.2. | **Delay of distribution on a disputed Claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a Final Order. |
| 5.3. | **Settlement of disputed Claims** | The Reorganized Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure |

## ARTICLE 6: EXECUTORY CONTRACTS

| | | |
|---|---|---|
| 6.1. | **Assumed executory contracts and unexpired leases** | (a) Reorganized Debtor assumes the following executory contracts and/or unexpired leases effective upon the Effective Date:<br>• N/A<br>(b) Reorganized Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.1(a) above, or before the date of the order confirming this Plan, upon the date of the entry of the order confirming this Plan. A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than **ninety (90)** days after the Effective Date. |

## ARTICLE 7: MEANS FOR IMPLEMENTATION OF THE PLAN

| | | |
|---|---|---|
| 7.1. | **General** | The Debtor proposes to implement and consummate this Plan through the means contemplated by §§ 1123 and 1145(a) of the Bankruptcy Code. |
| 7.2. | **Reorganized Debtor and Performance of Assumed Executory Contracts** | From and after the Effective Date, in accordance with the terms of this Plan and the Confirmation Order, the Reorganized Debtor shall perform all obligations under all executory contracts and unexpired leases assumed in accordance with Article 6 of this Plan. |
| 7.3. | **Reorganized Debtor and Estate assets** | 7.3.1. **Management of Reorganized Debtor**. The management of Reorganized Debtor will remain unaltered.<br>7.3.2. **Revesting [§ 1191(a)]**. On the Effective Date, if the Plan is confirmed pursuant to § 1191(a), title to all assets, claims, Causes of Action, properties, and business operations of the Debtor and of the Estate shall vest and/or revest in the Reorganized Debtor. Thereafter, each Reorganized Debtor shall own and retain such assets free and clear of all liens and Claims, except as expressly provided in this Plan. From and after the |

Effective Date, except as otherwise described in this Plan, each Reorganized Debtor shall own and operate such assets without further supervision by or jurisdiction of this Court, except as otherwise provided herein.

7.3.3. **Revesting/Vesting [§ 1191(b)]**. Upon the Effective Date, all property of the Estate shall revest (and/or vest if it is: (i) property of the kind specified in § 541 that the Debtor or Reorganized Debtor acquires after the commencement of the case, or (ii) earnings from services performed by the Debtor or Reorganized Debtor after the commencement of the case) in the Reorganized Debtor pursuant to 11 U.S.C. § 1141(b) solely as to legal title, possession, and the authority to use, operate, manage, acquire, sell, lease, and otherwise dispose of such property and to obtain credit and incur indebtedness. Such revesting/vesting is expressly made subject to, and does not extinguish, the continuing property interest of the Estate described in the following paragraph. From and after the Effective Date, the Reorganized Debtor may use, sell, or lease property of the Estate, and may obtain credit and incur indebtedness, in each case without further notice, hearing, motion, or order of the Court, and without the need to satisfy or comply with 11 U.S.C. §§ 363 or 364, whether or not such transaction is in the ordinary course of business, except as otherwise expressly provided in this Plan or the confirmation order; provided, however, that the revested property shall remain property of the Estate within the meaning of 11 U.S.C. § 1186(a) and subject to the terms of this Plan, as provided in the following paragraph. For the avoidance of doubt, no property revests/vests in the Reorganized Debtor free and clear of the Estate's continuing interest, the liens or claims preserved under this Plan, or the Reorganized Debtor's obligations hereunder

7.3.4. **Continuation of Estate Property [§ 1191(b)]**. Notwithstanding the foregoing revesting, because this Plan is confirmed under 11 U.S.C. § 1191(b), property of the Estate shall continue to include, in addition to the property specified in 11 U.S.C. § 541, (i) all property of the kind specified in § 541 that the Debtor or Reorganized Debtor acquires after the commencement of the case, and (ii) all earnings from services performed by the Debtor or Reorganized Debtor after the commencement of the case, in each case until the earlier of the entry of the Debtor's discharge under 11 U.S.C. § 1192 or the closing of the case. The Reorganized Debtor shall commit to the performance of this Plan all projected disposable income (as defined in 11 U.S.C. § 1191(d)) for the duration of the commitment period fixed under 11 U.S.C. § 1191(c)(2), and such projected disposable income shall remain subject to the claims of holders of allowed claims as provided in this Plan. In the event a final decree closing the case

| | | |
|---|---|---|
| | | is entered under 11 U.S.C. § 350(a) and Federal Rule of Bankruptcy Procedure 3022 prior to entry of the discharge under 11 U.S.C. § 1192, such closing shall not relieve the Reorganized Debtor of its obligations under this Plan.<br><br>7.3.5. **Disbursing Agent**. If the Plan is confirmed under § 1191(a) of the Bankruptcy Code the Reorganized Debtor shall serve as the disbursing agent, without bond, for purposes of making transfers and payments under this Plan. If the Plan is confirmed under § 1191(b) of the Bankruptcy Code the disbursing agent shall be: |
| | | ☐ SubV Trustee of the Reorganized Debtor |
| | | ☑ The Reorganized Debtor as request is hereby made pursuant to § 1194(b) of the Bankruptcy Code. |
| 7.4. | **Settlement of disputed Claims** | The Reorganized Debtor will each have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure respecting the Estate. |

## ARTICLE 8: GENERAL PROVISIONS

| | | |
|---|---|---|
| 8.1. | **Definitions** | The definitions set forth in § 101 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan. The following additional terms, when used in this Plan in capitalized form, shall have the meanings set forth below (defined terms are listed alphabetically):<br><br>**Ad Valorem Tax Authorities** means Northwest ISD and Tarrant County, the holders of Proofs of Claim 1 and 2, respectively, and the secured creditors under Class 1A of the Plan.<br>**Administrative Expense Claim** means an expense claim of the kind specified in section 503(b) of the Bankruptcy Code that is entitled to priority under section 507(a)(2) of the Bankruptcy Code.<br>**Ally** means Ally Bank, the holder of Proofs of Claim 5, 6, 7, 8, and 10 and the secured creditor under Classes 1B through 1E of the Plan.<br>**Allowed Claim** means any Claim against the Debtor (i) for which a proof of claim has been filed by the applicable bar date, or which has been listed by the Debtor in its Schedules as not disputed, contingent, or unliquidated; and (ii) as to which no objection to allowance, or motion to estimate for purposes of allowance, has been filed within the time periods set forth in the Bankruptcy Code or by order of the Bankruptcy Court.<br>**Bankruptcy Code** means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. |

**Bankruptcy Court** means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

**Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure.

**CA EDD** means the State of California Employment Development Department, the holder of Proof of Claim 14.

**Case** means the bankruptcy case styled In re Elite Project Management LLC, Case No. 26-42193-mxm11, pending in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

**Claim** means has the meaning ascribed to such term in section 101(5) of the Bankruptcy Code.

**Class** means a category of holders of Claims or Equity Interests as designated in Article 4 of the Plan.

**Comptroller** means the Texas Comptroller of Public Accounts.

**Confirmation Date** means the date upon which the Bankruptcy Court enters an order confirming the Plan in accordance with section 1129 of the Bankruptcy Code.

**Confirmation Order** means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**Debtor** means Elite Project Management LLC, the debtor and debtor-in-possession in this Case.

**Effective Date** means the first business day following the date that is fourteen (14) days after the Confirmation Date, provided that no stay of the Confirmation Order is then in effect.

**Equity Interest** means any equity ownership interest in the Debtor.

**Fiji SPV** means Fiji SPV LLC, the holder of Proof of Claim 18 and the alleged secured creditor under Class 1F of the Plan.

**General Unsecured Claim** means a Claim that is not (i) an Administrative Expense Claim, (ii) a Priority Claim, (iii) a Secured Claim, or (iv) an Equity Interest.

**IRS** means the Internal Revenue Service of the United States Department of the Treasury, the holder of Proof of Claim 11.

**Petition Date** means May 19, 2026, the date on which the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

**Plan** means this Plan of Reorganization, including all exhibits, supplements, appendices, and schedules hereto, as the same may be amended, modified, or supplemented from time to time.

**Plan Term** means the five (5) year period commencing on the Effective Date during which the distributions provided for in the Plan shall be made.

**Priority Claim** means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment under section 507(a) of the Bankruptcy Code.

| | | |
|---|---|---|
| | | **<u>Priority Tax Claim</u>** means any Claim of a governmental unit of a kind specified in section 507(a)(8) of the Bankruptcy Code.<br>**<u>Redwood</u>** means Redwood Business Loans LLC, the holder of Proof of Claim 17 and the alleged secured creditor under Class 1G of the Plan.<br>**<u>Reorganized Debtor</u>** means the Debtor on and after the Effective Date.<br>**<u>Schedules</u>** means the Schedules of Assets and Liabilities filed by the Debtor in the Case, as may be amended.<br>**<u>Secured Claim</u>** means a Claim that is secured by a lien on property in which the estate has an interest, to the extent of the value of the holder's interest in the estate's interest in such property, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code.<br>**<u>TD Bank</u>** means TD Bank, N.A., successor in interest to TD Auto Finance LLC, the holder of Proofs of Claim 3 and 4 and the secured creditor under Classes 1H and 1I of the Plan.<br>**<u>TWC</u>** means the Texas Workforce Commission, the holder of Proof of Claim 16. |
| 8.2. | **Effective Date** | The date that is fourteen (14) days after the Confirmation Order becomes a Final Order. |
| 8.3. | **Severability** | If any provision of this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceabililty and operative effect on any other provision of this Plan. |
| 8.4. | **Binding Effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.5. | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.6. | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided for in this Plan. |
| 8.7. | **Corporate Governance** | The management of each Reorganized Debtor will remain unaltered. |
| 8.8. | **Retention of Jurisdiction** | The Bankruptcy Court shall retain exclusive jurisdiction over this Case after Confirmation, notwithstanding consummation or substantial consummation, for the following purposes: |

8.8.1. to consider and effect any modification of this Plan under § 1127 of the Bankruptcy Code;

8.8.2. to hear and determine all controversies, suits and disputes that arise in connection with the interpretation, implementation, effectuation, consummation or enforcement of this Plan;

8.8.3. to hear and determine all requests for compensation and/or reimbursement of expenses for the period commencing on the Petition Date through the Confirmation Date;

8.8.4. to hear and determine all objections to Claims and Interests, and to determine the appropriate classification of any Claim or Interest, and other controversies, suits and disputes that may be pending at or initiated after the Confirmation Date, except as provided in the Confirmation Order;

8.8.5. to hear and determine all claims that the Debtor, as debtor in possession qua trustee, could assert under the Bankruptcy Code;

8.8.6. to consider and act on such other matters consistent with this Plan as may be provided in the Confirmation Order;

8.8.7. to make such orders as are necessary and appropriate to carry out and implement the provisions of this Plan;

8.8.8. to approve the reasonableness of any payments made or to be made, within the meaning of § 1129(a)(4) of the Bankruptcy Code;

8.8.9. to exercise the jurisdiction granted pursuant to §§ 505(a) and (b) of the Bankruptcy Code to determine any and all federal, state, local and foreign tax liabilities of, and any and all refunds of such taxes paid by the Debtor;

8.8.10. to hear and determine any issues or matters in connection with any property not timely claimed as provided in this Plan;

8.8.11. to hear and determine any controversies with respect to any settlements approved by the Bankruptcy Court;

8.8.12. to determine any and all motions, applications, adversary proceedings and contested matters whether pending in the Case as of the Effective Date or brought subsequently by the Reorganized Debtor; and

8.8.13. to enter a final decree closing any or all Cases.

**Failure of the Bankruptcy Court to Exercise Jurisdiction**. If the Bankruptcy Court abstains from exercising or declines to exercise

jurisdiction over any matter arising under, in or related to the Debtor's Estate, including with respect to the matters set forth herein, this Article 8 shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

| | |
|---|---|
| 8.9. **Rules of construction** | The rules of construction set forth in § 102 of the Code shall apply and are supplemented as follows: |

8.9.1. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular article, section, subsection or clauses contained in the Plan.

8.9.2. Unless otherwise specified, a reference to an article or a section is a reference to that article or section of the Plan.

8.9.3. Any reference in the Plan to a document being in a particular for or on particular terms and conditions meant that the document shall be substantially in such form or substantially on such terms and conditions.

8.9.4. Any reference in the Plan to an existing document means such document, as it may have been amended, modified or supplemented from time to time as of the Effective Date.

8.10. All headings utilized in this Plan are for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

## ARTICLE 9: DISCHARGE

### DISCHARGE IF PLAN IS CONFIRMED UNDER § 1191(a) OF THE BANKRUPTCY CODE

| | |
|---|---|
| ☐ | **Discharge if the Debtor is an individual and § 1141(d)(3) is not applicable.** Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure. |
| ☐ | **Discharge if the Debtor is a partnership and § 1141(d)(3) is not applicable.** On the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt imposed by this Plan. |

| | |
|---|---|
| ☑ | **Discharge if the Debtor is a corporation and § 1141(d)(3) is not applicable.** On the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:<br><br>(i) imposed by this Plan; or<br><br>(ii) to the extent provided in § 1141(d)(6). |
| ☐ | No discharge if § 1141(d)(3) is applicable. In accordance with § 1141(d)(3) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case. |
| | **DISCHARGE IF PLAN IS CONFIRMED UNDER § 1191(b) OF THE BANKRUPTCY CODE** |
| | If the Plan is confirmed under section 1191(b) of this title, as soon as practicable after completion by the Debtor of all payments due within the Plan Term, the Court shall grant the Debtor a discharge of all debts provided in §§ 503 and 1141(d)(1)(A) of the Bankruptcy Code to the extent provided for in the Plan, except any debt: (1) on which the last payment is due after the Plan Term; or (2) of the kind specified in § 523(a) of the Bankruptcy Code. |

## ARTICLE 10: OTHER PROVISIONS

| | |
|---|---|
| 10.1 **Conditions to Consummation** | The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived by the Debtor:<br><br>10.1.1. The Confirmation Order must have become a Final Confirmation Order.<br><br>10.1.2. No request for revocation of the Confirmation Order under § 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending; and<br><br>10.1.3. All actions, documents and agreements necessary to implement the Plan shall have been effectuated or executed.<br><br>10.1.4. <u>**Waiver of Conditions**</u>. Each of the conditions set forth above may be waived in whole or in part by the Debtor in its sole and absolute discretion, without any notice to parties in interests or the Bankruptcy Court, and without a hearing. The Debtor's waiver of any one condition shall not be deemed a waiver of any other condition. |
| 10.2 **Binding Effect** | Except as otherwise provided in § 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this |

| | |
|---|---|
| | Plan shall bind any holder of a Claim against or Interest in the Debtor and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan. |
| 10.3 **Injunction** | 10.3.1. **<u>Permanent Injunction</u>**. Except as otherwise expressly provided in this Plan or the confirmation order, and in consideration of the distributions and other treatment provided under this Plan, from and after the Effective Date all holders of claims against or interests in the Debtor, and all persons acting on their behalf, are permanently enjoined from taking any of the following actions against the Debtor, the Reorganized Debtor, or property of the Estate on account of any such claim or interest: (i) commencing or continuing any action, employment of process, or other proceeding; (ii) enforcing, attaching, collecting, or recovering upon any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting any setoff or right of subrogation of any kind, except to the extent permitted under 11 U.S.C. § 553; and (v) commencing or continuing any act, in any manner and in any place, that does not conform to or comply with the provisions of this Plan, in each case until such claim or interest has been satisfied, treated, or otherwise resolved in accordance with this Plan. This injunction is issued pursuant to 11 U.S.C. §§ 105(a) and 1141 and shall take effect on the Effective Date and remain in full force and effect, notwithstanding the entry of a final decree closing the case under 11 U.S.C. § 350(a) or the termination of the automatic stay under 11 U.S.C. § 362(c), until the Reorganized Debtor has fully performed its obligations under this Plan and the discharge under 11 U.S.C. § 1192 has been entered, at which time the injunctions and protections of 11 U.S.C. § 524 shall apply.<br><br>10.3.2. **The injunction provisions set forth herein do not enjoin the prosecution of any claims that arise on or after the Effective Date nor does it enjoin the determination of the Allowed Amount of any Claims that arose prior to the Effective Date by a court of competent jurisdiction.** |
| 10.4 **Notice of Default** | <u>Notice of Default</u>. Except as otherwise provided herein with respect to the treatment of a Class of Creditors, in the event of any alleged default under the Plan, any Creditor or party-in-interest must give a written default notice to the defaulting Reorganized Debtor with copies to counsel of record for the defaulting Reorganized Debtor specifying the nature of the default. Upon receipt of the default notice, the defaulting Reorganized Debtor shall have ten (10) days to cure such default from the time of receipt of the default notice. If such default has not been cured within the applicable time period any such Creditor or party-in-interest shall have the right to exercise any |

| | |
|---|---|
| | and all available remedies, including the right to undertake foreclosure upon any collateral securing the obligation, if applicable. Debtor is entitled to receive no more than 2 notices of default in any 12 month period. |
| 10.5 **Miscellaneous** | 10.5.1. **Request for Relief Under Section 1191(b)**. In the event any Class of Creditors or Interests shall fail to accept this Plan in accordance with §§ 1129(a) and 1191(a) of the Bankruptcy Code, the Debtor requests the Bankruptcy Court to confirm this Plan in accordance with the provisions of § 1191(b) of the Bankruptcy Code.<br><br>10.5.2. **Incorporation of Rule 9019**. To the extent necessary to effectuate and implement the compromises and releases contained in this Plan, the Plan shall be deemed to constitute a motion under Bankruptcy Rule 9019 seeking the Bankruptcy Court's approval of all of the compromises and releases contained herein.<br><br>10.5.3. **Computation of Time**. The computation of any time periods prescribed or allowed by the Plan shall be governed by Bankruptcy Rule 9006.<br><br>10.5.4. **Exhibits**. All exhibits to the Plan are incorporated into the Plan and shall be deemed to be part of the Plan.<br><br>10.5.5. **Modification**. The Debtor may alter, amend or modify this Plan under § 1127 of the Bankruptcy Code or as otherwise permitted by law prior to Confirmation. Further, the Reorganized Debtor may also seek to modify the Plan after Confirmation and prior to substantial consummation of the Plan so long as the treatment of the holders of Allowed Claims or Interests are not materially or adversely affected.<br><br>10.6. **Due Authorization**. Each and every Claim and Interest holder who elects to participate in the distributions provided for herein warrant that such Claim or Interest holder is authorized to accept, in consideration of such Claim against or Interest in the Debtor, the distributions provided for in this Plan and that there are not outstanding commitments, agreements, or understandings, expressed or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by such Claim or Interest holder under this Plan.<br><br>10.7. **Authorization of Corporate Action**. All matters and actions provided for under this Plan involving the structure of the Debtor or action to be taken by or required of the Debtor or Reorganized Debtor shall be deemed to have occurred and be effective as provided herein, and shall be deemed to be authorized and approved in all respects without any requirement for further action by the members or partners of the Debtor, as applicable. |

10.8. **Further Assurances and Authorizations**. The Debtor and/or the Reorganized Debtor, if and to the extent necessary, shall seek such orders, judgments, injunctions, and rulings that may be required to carry out further the intentions and purposes, and to give full effect to the provisions, of this Plan.

10.9. **Privileged Communications; Work Product.** For purposes of any proprietary, confidential or privileged information or communication, including attorney-client privileged communications, and documents that would otherwise constitute attorney work product, the Reorganized Debtor shall succeed to the interest of the Debtor and Estate, to the extent provided by applicable law.

10.10. **No Interest**. Except as expressly stated in this Plan, or allowed by the Bankruptcy Court, no interest, penalty or late charge is to be allowed on any Claim subsequent to the Petition Date.

10.11. **No Attorneys' Fees**. No attorneys' fees will be paid with respect to any Claim, other than Claims of professionals employed by the Debtor, except as specified herein or as allowed by a prior order of the Bankruptcy Court.

10.12. **Post-Confirmation Actions**. After Confirmation, the Reorganized Debtor may, with the approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies in this Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and effect of this Plan.

10.13. **Post-Confirmation Conversion and/or Dismissal**. Any Creditor or interested party, in the event of a default under the terms of this Plan, may file a motion to dismiss or convert this case pursuant to § 1112 of the Bankruptcy Code after the Plan is confirmed if the Case has not been closed or the Plan confirmed pursuant under section 1191(b). If the Bankruptcy Court orders the case converted to one under Chapter 7, then all property that had been property of the chapter 11 bankruptcy estate, and not previously disbursed under the terms of this Plan, shall revest in the Chapter 7 bankruptcy estate. Further, to the extent relief from stay had not previously been granted during the chapter 11 bankruptcy process, a new automatic stay shall be reimposed upon all property of the Chapter 7 bankruptcy estate.

10.14. **Post-Confirmation Removal of Reorganized Debtor**. In the event the Reorganized Debtor fails to perform its obligations under the confirmed Plan, the Court shall order the Reorganized Debtor to be removed as a debtor-in-possession in accord with § 1185(a) of the Bankruptcy Code and the SubV Trustee shall perform the duties specified in § 704(a)(8) of the Bankruptcy

Code and paragraphs (1), (2), and (6) of § 1106(a) of this title, including operating the business of the debtor in accord with § 1183(b)(5) of the Bankruptcy Code.

10.14.1. Should this Plan be confirmed pursuant to § 1191(a) of the Bankruptcy Code any and all property that vests in the Reorganized Debtor under the terms of this Plan shall vest and/or revest in the Reorganized Debtor's Estate in the event the Reorganized Debtor is removed under § 1185(a) of the Bankruptcy Code.

10.15. **Minimum Distribution**. Notwithstanding anything to the contrary in this Plan, the Reorganized Debtor shall be required to make distributions under this Plan of a sum less than $100.00 to any Allowed Claim holder. In such case, the Allowed Amount of such Claims shall be reduced to zero and such funds shall be retained by the Reorganized Debtor.

10.16. **Substantial Consummation**. If the Plan is confirmed pursuant to § 1191(a) of the Bankruptcy Code, substantial consummation shall be deemed to occur when the Reorganized Debtor makes initial distributions pursuant to the terms of the Plan.

10.17. **Notices**. All notices, requests, elections or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested. Any notices required to be delivered to the Debtor shall be addressed as follows:

**To Debtor and/or Reorganized Debtor:**
Elite Project Management LLC
Attention: Bryan Young
2437 Otero Pass
Fort Worth, TX 76131

**With a copy to:**
Robert T. DeMarco
DeMarco Mitchell, PLLC
12770 Coit Road, 850
Dallas, TX 75251

10.18. **Notices and Distributions**. On and after the Effective Date, all notices, requests and distributions to Claimants shall be sent to the last known address of: (1) the Claimant or its/his/her attorney of record as reflected in the Claimant's proof of claim; or (2) if there is no such evidence of a last known address, to the last known address of the Claimant according to the books and records of either Debtor. Any Claimant may designate another

address for the purposes of this Section by providing the subject Reorganized Debtor written notice of such address, which notice will be effective upon receipt by said Reorganized Debtor.

10.19. **Unclaimed Property**. If any property distributed under the Plan by the Reorganized Debtor remains unclaimed for a period of two (2) years the initial date of the attempted delivery such unclaimed property shall be forfeited by the Claimant and the unclaimed property and the right to receive it shall revert to and vest in the subject Reorganized Debtor free and clear of any claims, rights or interests. Said Reorganized Debtor, on the anniversary of the Effective date, shall file with the Bankruptcy Court a schedule that identifies the name and last-known address of all holders of unclaimed distributions.

10.20. **Setoff**. Except as specifically provided in the Plan, no Creditor shall retain any contractual or statutory right to set off any asset in which either Debtor or Reorganized Debtor has an interest in satisfaction of that Creditor's pre-petition Claim. Any right to set off a claim against an asset of either Debtor or Reorganized Debtor which is not specifically retained is waived.

10.21. **No Admissions**. Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Plan Proponents with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety, any classification of any Claim or Interest, or the valuation of any property.

Respectfully submitted,

Dated: August 18, 2026

*/s/ Bryan Young*
Bryan Young, Manager,
Elite Project Management LLC

Presented by:

*/s/ Robert T. DeMarco*

**DeMarco•Mitchell, PLLC**
Robert T. DeMarco, Texas Bar No. 24014543
**Email** robert@demarcomitchell.com
Michael S. Mitchell, Texas Bar No. 00788065
**Email** mike@demarcomitchell.com
12770 Coit Road, 850
Dallas, TX 75251
**T** 972-991-5591
**F** 972-346-6791

**Attorneys for the Debtor and
Debtor-in-Possession**

# EXHIBIT "A"

A. **CHAPTER 7 DIVIDENDS PAID.** The Debtor makes the following assumptions:

| ASSET | LIQUIDATION VALUE | LIEN | NET ASSET VALUE |
|---|---|---|---|
| A/R | $189,219 | $0 | $189,219 |
| Vehicles | $153,000 | $153,000 | $0 |
| Cash | $32,141 | $0.00 | $32,141 |
| **TOTAL** | | | **$221,360** |

As set forth in the above table, Debtor asserts the liquidation value of the Debtor's collective assets, net of secured liens, is approximately $221,360. That amount would be consumed in its entirety by the costs and expenses of administration of a chapter 7 case and by the $2,582,504.18 in Claims entitled to priority under § 507(a)(8) of the Bankruptcy Code, leaving $0.00 available for distribution to the holders of general unsecured Claims.

B. **PLAN DIVIDENDS PAID.** The Debtor makes the following assumptions:

| ASSUMPTION | COST |
|---|---|
| The Debtor is able to continue operating through the Plan Term and will meet or exceed the projections provided herewith. | n/a |
| The Debtor will not liquidate any equipment or inventory. | n/a |

The Plan provides for a $1,200,000 dividend to all unsecured creditors over a period of five (5) years. Debtor contends the Plan provides for a greater dividend to all creditors than would a liquidation of assets under chapter 7.

# EXHIBIT "B"

Set of projections are attached.

| | Sep-26 | Oct-26 | Oct-26 | Nov-26 | Dec-26 |
|---|---|---|---|---|---|
| **INCOME** | | | | | |
| **Gross Income** | $541,666.67 | $541,666.67 | $541,666.67 | $541,666.67 | $541,666.67 |
| **Other Income** | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **Cost of Goods Sold** | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **TOTAL Income** | **$541,666.67** | **$541,666.67** | **$541,666.67** | **$541,666.67** | **$541,666.67** |
| **EXPENSES** | | | | | |
| **Materials** | | | | | |
| **Bank Charges & Fees** | | | | | |
| **Equipment Rental** | | | | | |
| **Insurance** | | | | | |
| **Liability Insurance** | $5,420.00 | $5,420.00 | $5,420.00 | $5,420.00 | $5,420.00 |
| **Workers' Comp Insurance** | $3,044.95 | $3,044.95 | $3,044.95 | $3,044.95 | $3,044.95 |
| **Insurance - TOTAL** | **$8,464.95** | **$8,464.95** | **$8,464.95** | **$8,464.95** | **$8,464.95** |
| **Office Supplies** | $1,084.00 | $1,084.00 | $1,084.00 | $1,084.00 | $1,084.00 |
| **Payroll Expenses** | | | | | |
| **Payroll Taxes** | $82,333.33 | $82,333.33 | $82,333.33 | $82,333.33 | $82,333.33 |
| **Wages** | $318,500.00 | $318,500.00 | $318,500.00 | $318,500.00 | $318,500.00 |
| **Payroll Expenses - TOTAL** | **$400,833.33** | **$400,833.33** | **$400,833.33** | **$400,833.33** | **$400,833.33** |
| **Professional Fees** | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 |
| **Rent & Lease** | $2,600.00 | $2,600.00 | $2,600.00 | $2,600.00 | $2,600.00 |
| **Repairs & Maintenance** | $3,250.00 | $3,250.00 | $3,250.00 | $3,250.00 | $3,250.00 |
| **Software Expenses** | | | | | |
| **Software Development** | $3,290.00 | $3,290.00 | $3,290.00 | $3,290.00 | $3,290.00 |
| **Software Licenses** | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| **Software Expenses - TOTAL** | **$4,290.00** | **$4,290.00** | **$4,290.00** | **$4,290.00** | **$4,290.00** |
| **Telephone Expense** | $950.00 | $950.00 | $950.00 | $950.00 | $950.00 |
| **Uniform** | $520.00 | $520.00 | $520.00 | $520.00 | $520.00 |
| **Utilities** | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 |
| **Vehicle Expenses** | | | | | |
| **Vehicle Fuel** | $4,500.00 | $4,500.00 | $4,500.00 | $4,500.00 | $4,500.00 |
| **Vehicle Insurance** | $1,256.00 | $1,256.00 | $1,256.00 | $1,256.00 | $1,256.00 |
| **Toll & Parking** | $120.00 | $120.00 | $120.00 | $120.00 | $120.00 |
| **Vehicle Expenses - TOTAL** | **$5,876.00** | **$5,876.00** | **$5,876.00** | **$5,876.00** | **$5,876.00** |
| **TOTAL Expenses** | **$434,468.28** | **$434,468.28** | **$434,468.28** | **$434,468.28** | **$434,468.28** |
| **Net Income** | **$107,198.38** | **$107,198.38** | **$107,198.38** | **$107,198.38** | **$107,198.38** |

| | Jan-27 | Feb-27 | Mar-27 | Apr-27 | May-27 |
|---|---|---|---|---|---|
| **INCOME** | | | | | |
| **Gross Income** | $541,666.67 | $541,666.67 | $541,666.67 | $541,666.67 | $541,666.67 |
| **Other Income** | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **Cost of Goods Sold** | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **TOTAL Income** | **$541,666.67** | **$541,666.67** | **$541,666.67** | **$541,666.67** | **$541,666.67** |
| **EXPENSES** | | | | | |
| **Materials** | | | | | |
| **Bank Charges & Fees** | | | | | |
| **Equipment Rental** | | | | | |
| **Insurance** | | | | | |
| **Liability Insurance** | $5,420.00 | $5,420.00 | $5,420.00 | $5,420.00 | $5,420.00 |
| **Workers' Comp Insurance** | $3,044.95 | $3,044.95 | $3,044.95 | $3,044.95 | $3,044.95 |
| **Insurance - TOTAL** | **$8,464.95** | **$8,464.95** | **$8,464.95** | **$8,464.95** | **$8,464.95** |
| **Office Supplies** | $1,084.00 | $1,084.00 | $1,084.00 | $1,084.00 | $1,084.00 |
| **Payroll Expenses** | | | | | |
| **Payroll Taxes** | $82,333.33 | $82,333.33 | $82,333.33 | $82,333.33 | $82,333.33 |
| **Wages** | $318,500.00 | $318,500.00 | $318,500.00 | $318,500.00 | $318,500.00 |
| **Payroll Expenses - TOTAL** | **$400,833.33** | **$400,833.33** | **$400,833.33** | **$400,833.33** | **$400,833.33** |
| **Professional Fees** | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 |
| **Rent & Lease** | $2,600.00 | $2,600.00 | $2,600.00 | $2,600.00 | $2,600.00 |
| **Repairs & Maintenance** | $3,250.00 | $3,250.00 | $3,250.00 | $3,250.00 | $3,250.00 |
| **Software Expenses** | | | | | |
| **Software Development** | $3,290.00 | $3,290.00 | $3,290.00 | $3,290.00 | $3,290.00 |
| **Software Licenses** | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| **Software Expenses - TOTAL** | **$4,290.00** | **$4,290.00** | **$4,290.00** | **$4,290.00** | **$4,290.00** |
| **Telephone Expense** | $950.00 | $950.00 | $950.00 | $950.00 | $950.00 |
| **Uniform** | $520.00 | $520.00 | $520.00 | $520.00 | $520.00 |
| **Utilities** | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 |
| **Vehicle Expenses** | | | | | |
| **Vehicle Fuel** | $4,500.00 | $4,500.00 | $4,500.00 | $4,500.00 | $4,500.00 |
| **Vehicle Insurance** | $1,256.00 | $1,256.00 | $1,256.00 | $1,256.00 | $1,256.00 |
| **Toll & Parking** | $120.00 | $120.00 | $120.00 | $120.00 | $120.00 |
| **Vehicle Expenses - TOTAL** | **$5,876.00** | **$5,876.00** | **$5,876.00** | **$5,876.00** | **$5,876.00** |
| **TOTAL Expenses** | **$434,468.28** | **$434,468.28** | **$434,468.28** | **$434,468.28** | **$434,468.28** |
| **Net Income** | **$107,198.38** | **$107,198.38** | **$107,198.38** | **$107,198.38** | **$107,198.38** |

| | Jun-27 | Jul-27 | Total |
|---|---|---|---|
| **INCOME** | | | |
| **Gross Income** | $541,666.67 | $541,666.67 | $6,500,000.00 |
| **Other Income** | $0.00 | $0.00 | $0.00 |
| **Cost of Goods Sold** | $0.00 | $0.00 | $0.00 |
| **TOTAL Income** | **$541,666.67** | **$541,666.67** | **$6,500,000.00** |
| **EXPENSES** | | | |
| **Materials** | | | $0.00 |
| **Bank Charges & Fees** | | | $0.00 |
| **Equipment Rental** | | | $0.00 |
| **Insurance** | | | |
| **Liability Insurance** | $5,420.00 | $5,420.00 | $65,040.00 |
| **Workers' Comp Insurance** | $3,044.95 | $3,044.95 | $36,539.40 |
| **Insurance - TOTAL** | **$8,464.95** | **$8,464.95** | **$101,579.40** |
| **Office Supplies** | $1,084.00 | $1,084.00 | $13,008.00 |
| **Payroll Expenses** | | | |
| **Payroll Taxes** | $82,333.33 | $82,333.33 | $988,000.00 |
| **Wages** | $318,500.00 | $318,500.00 | $3,822,000.00 |
| **Payroll Expenses - TOTAL** | **$400,833.33** | **$400,833.33** | **$4,810,000.00** |
| **Professional Fees** | $5,500.00 | $5,500.00 | $66,000.00 |
| **Rent & Lease** | $2,600.00 | $2,600.00 | $31,200.00 |
| **Repairs & Maintenance** | $3,250.00 | $3,250.00 | $39,000.00 |
| **Software Expenses** | | | |
| **Software Development** | $3,290.00 | $3,290.00 | $39,480.00 |
| **Software Licenses** | $1,000.00 | $1,000.00 | $12,000.00 |
| **Software Expenses - TOTAL** | **$4,290.00** | **$4,290.00** | **$51,480.00** |
| **Telephone Expense** | $950.00 | $950.00 | $11,400.00 |
| **Uniform** | $520.00 | $520.00 | $6,240.00 |
| **Utilities** | $1,100.00 | $1,100.00 | $13,200.00 |
| **Vehicle Expenses** | | | |
| **Vehicle Fuel** | $4,500.00 | $4,500.00 | $54,000.00 |
| **Vehicle Insurance** | $1,256.00 | $1,256.00 | $15,072.00 |
| **Toll & Parking** | $120.00 | $120.00 | $1,440.00 |
| **Vehicle Expenses - TOTAL** | **$5,876.00** | **$5,876.00** | **$70,512.00** |
| **TOTAL Expenses** | **$434,468.28** | **$434,468.28** | **$5,213,619.40** |
| **Net Income** | **$107,198.38** | **$107,198.38** | **$1,286,380.60** |

# PLAN PAYMENT SUMMARY — Elite Project Management LLC

**Case No. 4:26-bk-42193-mxm11 · Chapter 11, Subchapter V · U.S. Bankruptcy Court, Northern District of Texas, Fort Worth Division · Hon. Mark X. Mullin · Petition Date May 19, 2026 · Debtor's Plan of Reorganization dated August 18, 2026**

| Class / Item | Creditor | Claim No. | Allowed / Treatment | Rate | Term (mos.) | Monthly Payment | Plan § |
|---|---|---|---|---|---|---|---|
| **A. UNCLASSIFIED CLAIMS — ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS (Plan Art. 3)** | | | | | | | |
| Administrative Expenses | Professional fees, U.S. Trustee fees, § 503(b) claims | — | TBD | | | | § 3.2, 3.6 |
| Priority Tax — IRS | Internal Revenue Service | 11-1 | $2,433,924.30 | 7.00% | 48 | $58,283.35 | § 3.4 |
| Priority Tax — CA EDD | State of California, Employment Development Dept. | 14-1 | $142,441.44 | 7.00% | 48 | $3,410.94 | § 3.4 |
| Priority Tax — TWC | Texas Workforce Commission | 16-1 | $6,138.44 | 7.75% | 48 | $149.14 | § 3.4 |
| Priority Tax — Comptroller | Texas Comptroller of Public Accounts | — | - | 7.75% | 48 | - | § 3.4 |
| **SUBTOTAL — Priority Tax Claims (months 1–48)** | | | | | | **$61,843.43** | |
| **B. CLASS 1 — SECURED CLAIMS (Plan § 4.1)** | | | | | | | |
| Class 1A — Ad Valorem | Northwest ISD and Tarrant County | 1-1, 2-1 | $15,298.73 | 12.00% | 60 | $340.31 | § 4.1 |
| Class 1B — Ally | Ally Bank (Claim 5) | 5-1 | $44,000.00 | 7.25% | 60 | $876.45 | § 4.1 |
| Class 1C — Ally | Ally Bank (Claim 7) | 7-1 | $31,000.00 | 7.25% | 60 | $617.50 | § 4.1 |
| Class 1D — Ally | Ally Bank (Claim 8) | 8-1 | $44,000.00 | 7.25% | 60 | $876.45 | § 4.1 |
| Class 1E — Ally | Ally Bank (Claim 10) | 10-1 | $34,000.00 | 7.25% | 60 | $677.26 | § 4.1 |
| Class 1F — Fiji SPV | Fiji SPV LLC | 18-1 | - | | | - | § 4.1 |
| Class 1G — Redwood | Redwood Business Loans LLC | 17-1 | - | | | - | § 4.1 |
| Class 1H — TD Bank | TD Bank, N.A. (Claim 3) | 3-1 | $36,089.78 | 5.59% | 60 | $690.86 | § 4.1 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Class 1I — TD Bank | TD Bank, N.A. (Claim 4) | 4-1 | $45,414.14 | 7.25% | 60 | $904.62 | § 4.1 |
| **SUBTOTAL — Class 1 Secured (months 1–60)** | | | | | | **$4,983.45** | |
| **C. CLASS 2 — PRIORITY CLAIMS (non-tax, § 507(a) other than (a)(2) and (a)(8)) (Plan § 4.1)** | | | | | | | |
| Class 2 — Priority | None | — | - | | | - | § 4.1 |
| **D. CLASS 3 — GENERAL UNSECURED CLAIMS (Plan § 4.1) — itemized on the 'Class 3 Unsecured Detail' tab** | | | | | | | |
| Class 3 — Unsecured Pool | All holders of Allowed Class 3 Claims | — | $1,618,309.73 | | 60 | $20,000.00 | § 4.1 |
| **E. CLASS 4 — EQUITY SECURITY HOLDERS (Plan § 4.1)** | | | | | | | |
| Class 4 — Equity | Bryan Young (Manager / | — | - | | | - | § 4.1 |
| **F. EXECUTORY CONTRACTS AND UNEXPIRED LEASES (Plan § 6.1)** | | | | | | | |
| Assumed contracts / leases | NONE — § 6.1(a) reads "N/A" | — | - | | | - | § 6.1 |
| **TOTAL MONTHLY PLAN OBLIGATION** | | | | | | | |
| **Months 1 – 48** | **Class 1 secured + priority tax + Class 3 pool** | | | | | **86826.88** | |
| **Months 49 – 60** | **Class 1 secured + Class 3 pool** | | | | | **24983.45** | |
| **TOTAL — 60-month Plan Term** | **All classes** | | | | | | |

## CLASS 3 — GENERAL UNSECURED CLAIMS: TOTAL, DIVIDEND AND PAYMENT TIMING

**Elite Project Management LLC · Case No. 4:26-bk-42193-mxm11 · Plan § 4.1, Class 3 · Plan dated August 18,**

| Claim No. | Creditor | Amount | Basis |
|---|---|---|---|
| **GROUP 1 — GENERAL UNSECURED PROOFS OF CLAIM (per the 'Claim Summary' tab)** | | | |
| 15-1 | Atlas Acquisitions LLC o/b/o W Funding Group LLC | $402,050.00 | Commercial loan, 01/05/2026 |
| 11-1 | Internal Revenue Service | $570,365.23 | Federal tax penalties |
| 14-1 | State of California — Employment Development Dept. | $98,616.00 | CA payroll tax penalties |
| 19-1 | Headway Capital, LLC | $43,577.69 | Business line of credit |
| 9-1 | AmeriCredit Financial Services d/b/a GM Financial | $35,317.54 | Repossession deficiency, 07/31/2024 |
| 13-1 | Santander Consumer USA d/b/a Chrysler Capital | $29,873.45 | Repossession deficiency, 10/04/2024 |
| 6-1 | Ally Bank | $25,182.04 | Monies loaned, 09/01/2023 |
| 12-1 | JPMorgan Chase Bank, N.A. | $18,364.29 | Credit card, acct. ending 9865 |
| 16-1 | Texas Workforce Commission | $72.45 | Unemployment tax penalty |
| | **SUBTOTAL — filed general unsecured proofs of claim** | **1223418.69** | |
| | CHECK — this subtotal less 'Claim Summary'!G32 | 0 | |
| **GROUP 2 — CRAMDOWN DEFICIENCIES CREATED BY THE PLAN (Classes 1B–1E)** | | | |
| 8-1 | Ally Bank (Class 1D) | $21,705.21 | Plan § 4.1, Class 1D |
| 5-1 | Ally Bank (Class 1B) | $19,372.29 | Plan § 4.1, Class 1B |
| 7-1 | Ally Bank (Class 1C) | $9,447.38 | Plan § 4.1, Class 1C |
| 10-1 | Ally Bank (Class 1E) | $6,156.16 | Plan § 4.1, Class 1E |
| | **SUBTOTAL — Ally cramdown deficiencies** | **56681.04** | |
| **GROUP 3 — ALLEGED SECURED CLAIMS STRIPPED IN FULL BY THE PLAN (Classes 1F and 1G)** | | | |
| 17-1 | Redwood Business Loans LLC (Class 1G) | $182,835.00 | Plan § 4.1, Class 1G |
| 18-1 | Fiji SPV LLC (Class 1F) | $155,375.00 | Plan § 4.1, Class 1F |
| | **SUBTOTAL — stripped Class 1F and 1G claims** | **338210** | |
| | **TOTAL ALLOWED CLASS 3 CLAIMS** | **1618309.73** | **Groups 1 + 2 + 3** |

| | | | |
|---|---|---|---|
| — | LG Funding (Sch. E/F 3.4) | $12,885.00 | No POC filed |

| PAYMENT TO CLASS 3 — HOW MUCH, HOW OFTEN, AND WHEN IT STARTS | | | |
|---|---|---|---|
| | **Pool funding rate (monthly)** | **$20,000.00** | |
| | **Quarterly distribution** | **$60,000.00** | |
| | **Number of quarterly payments** | **20** | |
| | **Total paid to Class 3 over the Plan Term** | **$1,200,000.00** | |
| | **ESTIMATED DIVIDEND TO CLASS 3** | **74.15%** | |
| | **Amount per $10,000 of allowed claim** | **$7,415.14** | |
| | **First payment due** | **20th day of the first complete post-petition quarter following commencement of pool funding** | |

# EXHIBIT "C"

Form Ballot is attached.

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| **IN RE:** | **Case No.:** **26- 42193-MXM-11** |
| **Elite Project Management LLC**<br>83-4399769<br>2437 Otero Pass<br>Fort Worth, TX 76131<br>**Debtor.** | **Chapter:** **11** |

**BALLOT FOR ACCEPTING OR REJECTING**
**PLAN OF REORGANIZATION**

**Elite Project Management LLC**, the debtor and debtor-in-possession in this Case filed Debtor's Plan of Reorganization [Dated August 18, 2026] (the "**Plan**") on August 18, 2026.

You should review the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.

If your Ballot is NOT received by:

**Elite Project Management LLC**
**C/O DEMARCO•MITCHELL, PLLC**
**12770 Coit Road, 850**
**Dallas, Texas 75251**

on or before **September _____, 2026, at 5:00 p.m.**, and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.

If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.

**ACCEPTANCE OR REJECTION OF THE PLAN**

The undersigned, the holder of a claim against the Debtor in the unpaid amount of:

**$** ____________________

☐ **ACCEPTS THE PLAN** ☐ **REJECTS THE PLAN**

**Dated:** ________________

**SIGNATURE:** ________________________________

**PRINT OR TYPE NAME:** ________________________________

**TITLE: (if corporation or partnership)** ________________________________

**COMPANY NAME: (if applicable)** ________________________________

**Address:** ________________________________

________________________________

**RETURN THIS BALLOT TO:**

**Elite Project Management LLC**
**C/O DEMARCO•MITCHELL, PLLC**
**12770 Coit Road, 850**
**Dallas, Texas 75251**